Mary B. CORTES, Dennis Cortes, Marcus J. Perkerson, William B. Barton, Rosemary L. Barton, James W. Reindl, Margaret S. Reindl, George E. Martino, Howard S. Rosen, Evelyn F. Rosen, G. Thomas Seeley, Judy A. Seeley, Jon David Steinmetz, William M. Guild and Patrick J. Martino, Plaintiffs,

v.

Ronald GRATKOWSKI and Patrick A. Parisi, Defendants.

Patrick A. PARISI, Third–Party Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY, an Illinois corporation, Third–Party Defendant.

No. 90 C 2904.

United States District Court, N.D. Illinois, E.D.

May 14, 1992.

Alan L. Garrow, John M. Lison, Lison & Griffin, Chicago, Ill., for plaintiffs.

Kenneth Steven Ulrich, David S. Heller, Goldberg, Kohn, Bell, Black, Rosenbloom &

Moritz, Ltd., Thomas L. Browne, Edward Joseph Rolwes, Hinshaw & Culbertson, George B. Collins, Collins & Bargione, Craig Wynn Church, O'Connor, Schiff & Myers, Chicago, Ill., for defendants and third-party plaintiff.

John J. Lynch, Cynthia Ann Matre, Haskell & Perrin, Chicago, Ill., for third-party defendant.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiffs, investors in a real estate partnership, brought this action for violations of § 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder (Count I), violations of the Illinois Securities Law of 1953, Ill.Ann.Stat. ch. 121½, ¶ 137.1 *et seq.* (Count II), legal malpractice (Count III), and breach of contract (Count IV). Plaintiffs allege that defendants Ronald Gratkowski and Patrick A. Parisi ("defendants") made and concealed misrepresentations and omissions of material facts in the course of the sale of partnership interests. Defendant Parisi ("defendant") moves for summary judgment on all counts as to certain plaintiffs. For the following reason, that motion is denied.

## FACTS

The facts according to plaintiffs' complaint are as follows. Defendants, while jointly doing business as "Urban Innovations," formed partnerships for the purposes of acquiring, developing, rehabilitating, selling and/or renting various real estate projects. (Complaint, ¶ 5.) Defendants jointly formed an entity called "Urban Innovations: Sheridan II General Partnership." The purpose of this entity was "to acquire, manage, rehabilitate, mortgage, lease and/or convert and/or further develop/improve the premises located at 4128–36 North Sheridan Road in the City of Chicago" (the "Sheridan II Project"). (*Id.,* ¶ 6.) In forming the Sheridan II Project, defendants created a document, entitled "Urban Innovations: General Partnership Joint Venture Agreement," which purports to set forth the interests of the participants in this entity. (*Id.,* ¶ 7.)

Plaintiffs allege that beginning in or about November, 1986 and continuing through May, 1989, defendants commenced a course of conduct designed to sell interests in the Sheridan II Project to plaintiffs. (*Id.,* ¶ 8.) In connection with such sale, defendants made various oral and written misrepresentations of material facts, omitted to state material facts necessary in order to make the representations not misleading, and engaged in a continuing scheme to conceal such misrepresentations and omissions. (*Id.,* ¶¶ 9–10.)

## DISCUSSION

Defendant's summary judgment motion is based upon the statute of limitations for claims under § 10(b) of the 1934 Act. Defendant relies on the Supreme Court's decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* —— U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) and the Seventh Circuit's decision in *Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991). These cases rejected the practice of borrowing from state law the limitations period for § 10(b) claims and established a federal limitations period. *Lampf,* 111 S.Ct. at 2780; *Short,* 908 F.2d at 1389. The federal statute of limitations announced in these cases bars § 10(b) actions not brought within one year after the discovery of the facts constituting the violation and within three years after such violation. *Lampf,* 111 S.Ct. at 2782; *Short,* 908 F.2d at 1390. The three year limit is a period of repose which is inconsistent with tolling. *Lampf,* 111 S.Ct. at 2782; *Short,* 908 F.2d at 1391–92.

In reliance on *Lampf* and *Short,* defendant argues that any purchase of securities by plaintiffs which occurred more than three years prior to the filing of this suit on May 22, 1990, are barred by the statute of limitations. Furthermore, defendant contends that payments made by these plaintiffs subsequent to May 22, 1987, were

required responses to partnership capital calls and were not subsequent sales of securities involving investment decisions. Finally, defendant moves to dismiss Counts II, III, and IV for lack of pendent jurisdiction should Count I, upon which federal jurisdiction is premised, be dismissed.

On December 19, 1991, seven months after the decision in *Lampf,* Congress passed the Federal Deposit Insurance Corporation Improvement Act of 1991 (the "FDIC Act"), Public Law 102–242, 105 Stat. 2236. Section 476 of the FDIC Act amends the 1934 Act and requires only the prospective application of *Lampf.*[1] Under § 476(a),

> [t]he limitations period for any private civil action implied under § 10(b) of this [1934] Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

Section 476 implicitly approves the statute of limitations adopted by the Supreme Court in *Lampf* on June 20, 1991, but overrules the Court's retroactive application of the limitation period.[2] Thus, Congress, by passing § 476 in light of *Lampf,* effectively established a federal statute of limitations for § 10(b) cases and decided that the limitations period would be effective only for cases commenced after June 19, 1991.

## I. CONSTITUTIONALITY OF § 476 OF THE FDIC ACT

■ Defendant argues that § 476 violates the Equal Protection Clause of the U.S. Constitution because "the statute creates separate classes of citizens with different protections regarding the same federal securities claim depending on where the citizens reside and when the claim was filed." (Def.Supp.Reply, p. 10.) Defendant contends that such classifications are not rationally related to a legitimate governmental purpose. (*Id.* at 11.)

■ All the cases cited by defendant in support of his equal protection claim involve the invalidation of state laws. This is particularly significant because greater deference is afforded to Congress when a court tests a federal law than to a state legislature when a court tests a state statute. *Hampton v. Mow Sun Wong*, 426 U.S. 88, 96 S.Ct. 1895, 1905, 48 L.Ed.2d 495 (1976). The Supreme Court has stated that when a discriminatory rule is expressly mandated by Congress, "we might presume that any interest which might rationally be served by the rule did in fact give rise to its adoption." *Id.*

Defendant places primary reliance on a string of cases invalidating state laws providing unequal distribution of benefits to residents based upon duration of residency. In the case at hand, no resident is being treated differently due to duration of residency. Instead, § 476 treats all residents of a state equally under the limitations period of that state regardless of duration of residency. Residents of different states may be subject to different statutes of limitations for claims arising under § 10(b). However, the existence of differences between laws of the fifty states has never been found unconstitutional, and is in fact commonplace in our system of government.

Defendant cannot seriously argue that whenever courts borrow state law to fill gaps in a federal law, an equal protection violation occurs. Indeed, the Supreme Court in *Lampf* stated that

> [i]t is the usual rule that when Congress has failed to provide a statute of limitations for a federal cause of action, a court "borrows" or "absorbs" the local time limitation most analogous to the case at hand. This practice, derived from the Rules of Decision Act, 28 U.S.C. § 1652, has enjoyed sufficient longevity that we may assume that, in enacting remedial legislation, Congress ordinarily "intends by its silence that we borrow state law."

---

1. Section 476 is to be codified as § 27A of the 1934 Act.

2. The parties were granted leave to file supplemental memoranda addressing the effect of § 476 on defendant's motion for summary judgment.

111 S.Ct. at 2778 (citations omitted). In the words of the Seventh Circuit,

> [o]ne of the venerable applications [of this practice of borrowing] is to obtain periods of limitations from state law. This is so predictable that Congress may anticipate it, so that when it does not enact a federal statute of limitations it means to leave in place the background rule that state law applies.

*Short,* 908 F.2d at 1387 (citations omitted).

Defendant provides no case in which a deficient federal statute remedied by a state law "gap filler" violates the Equal Protection Clause because the statute "creates separate classes of citizens with different protections regarding the same federal ... law." (Def.Supp.Reply, p. 10.) Since the practice of borrowing state law does not raise constitutional concerns when it is done under the authority of the Rules of Decision Act, the court finds no reason to believe that such concerns would arise when state law is borrowed under the mandate of § 476.

The date chosen by Congress for the use of state limitation periods—June 19, 1991— is reasonably related to Congress' apparent desire to nullify the retroactive application of the federal statute of limitations adopted by the Supreme Court in *Lampf* on June 20, 1991. The court is aware of no cases raising equal protection concerns due to a decision by Congress to apply a law prospectively only. Indeed, innumerable federal laws calling for prospective application of a newly-passed law would be threatened by such a holding. The Supreme Court's decision in *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), is inapposite because Congress, through § 476, has spoken regarding retroactivity of the federal limitations period announced in *Lampf.*

Defendant points out that *Lampf* demonstrates the Supreme Court's recognition of the need for a uniform statute of limitations. However, the Court went no further than pointing out "the desirability" of a uniformity because "the use of state statutes would present the danger of forum shopping and, at the very least, would virtually guarantee ... complex and expensive litigation." *Lampf,* 111 S.Ct. at 2779. This is a far cry from finding that multiple state limitations would pose any sort of constitutional problems. No equal protection concerns are raised by § 476 of the FDIC Act.

## II. APPLICABLE STATUTE OF LIMITATIONS

■ This action was commenced on May 22, 1990. Pursuant to § 476, the applicable limitation period is the period provided by the laws of this jurisdiction as such laws existed on June 19, 1991. In the Seventh Circuit, the statute of limitations for cases arising under § 10(b) was established in *Short,* 908 F.2d at 1390. The court adopted the statute of limitations from § 13 of the Securities Act of 1933, as amended by the Securities Exchange Act of 1934, 15 U.S.C. § 77m, which states that actions must be brought within one year after the discovery of the facts constituting the violation and within three years after such violation. *Id.* at 1392. The *Short* court left open the question of whether the new limitations rule should be applied retroactively. *Id.* at 1389–90. Since this case was filed over two months prior to the decision in *Short,* the question of retroactivity must be addressed. As provided in § 476, the court is to apply this jurisdiction's "principles of retroactivity, as such laws existed on June 19, 1991."

Defendant correctly looks to the retroactivity factors found in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971):

> (1) the newly announced rule of law overrules clear precedent on which litigants may have relied;
> (2) the new rule's purpose and effect would not be substantially furthered by retroactive application; and
> (3) imposing the new rule retroactively would impose hardship or injustice.

*Id.* 92 S.Ct. at 355–56. The new limitations period announced in *Short* plainly overruled clear precedent. *Short* was a break from a long-established precedent of borrowing the statute of limitations from the

Illinois blue sky law, Ill.Ann.Stat. ch. 121½, ¶ 137.13(D). As the Seventh Circuit explained in *Short,*

> [f]or many years we have · applied to cases under Rule 10b–5 statutes of limitations borrowed from state blue sky statutes, adding an overlay of tolling principles from state and federal law.... Federal courts are so accustomed to turning to state periods of limitations that we (and our colleagues in other circuits) did this on auto-pilot, without discussing whether something differentiated securities laws from other statutes.

*Short,* 908 F.2d at 1387 (citations omitted). Defendant argues that *Short* was clearly foreshadowed by recent Supreme Court and Seventh Circuit cases. *See, e.g., Norris v. Wirtz,* 818 F.2d 1329, 1333 (7th Cir. 1987). However, these courts declined to change the law in this area and instead reaffirmed the practice of borrowing the Illinois limitations period. *See, e.g., id.* Thus, the criticism of the state-borrowing scheme failed to cloud and in fact strengthened the clear past precedent of applying the statute of limitations from the Illinois blue sky law to § 10(b) cases.

Defendant relies on *Short* and several district court cases where the plaintiff failed to demonstrate actual reliance on past precedent. *See Short,* 908 F.2d at 1390; *In re VMS Sec. Litigation,* 752 F.Supp. 1373, 1388 (N.D.Ill.1990); *Wentzka v. Gellman,* 759 F.Supp. 484, 488 (E.D.Wis. 1991); *Flaherty v. Greenblatt,* No. 88 C 9755, 1990 WL 172698, 1990 U.S. Dist. LEXIS 14547 (N.D.Ill.1990); *Polansky v. PaineWebber Inc.,* 762 F.Supp. 768, 771 (N.D.Ill.1991). These cases involve plaintiffs who filed a lawsuit immediately upon learning of the violation and thus could not have relied upon earlier law regarding the statute of limitations applicable to § 10(b) cases. *See Short,* 908 F.2d at 1390 (plaintiff unaware of basis for litigation until short time before filing suit); *In re VMS Sec. Litigation,* 752 F.Supp. at 1388 (suit filed just over one month after plaintiffs became aware of their claims); *Wentzka,* 759 F.Supp. at 488 (plaintiff unaware of

basis for litigation until short time before filing suit); *Flaherty,* No. 88 C 9755, 1990 WL 172698 (plaintiff filed suit two months after they discovered their cause of action); *Polansky,* 762 F.Supp. at 771 (plaintiff filed suit after the *Short* decision so could not have relied on prior precedent). Given the absence of reliance in these cases, retroactive application of the new law was appropriate.

Unlike these cases, plaintiffs could have relied on the longer limitations period in the Illinois blue sky law. Plaintiffs claim that they became aware of the basis for litigation in May, 1989, after which plaintiffs waited one year before filing this action on May 22, 1990. Plaintiffs could have relied on the three-year/five-year scheme under Illinois law [3] when they delayed commencing this suit until a date which the one-year/three-year rule in *Short* may have barred some or all of plaintiffs' claims. *See Reshal Assoc., Inc. v. Long Grove Trading Co.,* 754 F.Supp. 1226 (N.D.Ill. 1990) (filing suit one year after discovery of cause of action shows justifiable reliance on Illinois statute of limitations). Therefore, the statute of limitations announced in *Short* overruled clear precedent on which plaintiffs may have relied.

The second *Chevron* factor requires a determination of whether the new rule's purpose and effect would be furthered or retarded by retroactive application. Retrospective operation

> in the context of statutes of limitations generally focuses on two interests: the remedial interest served by the cause of action, and the interest of uniformity and certainty.... Where a judicial decision shortens the statute of limitations, retroactive application tends to further the second interest but hinder the first interest. It has also been noted that placement of undue emphasis on the uniformity interest would "swallow[ ] the rule," because new statutes of limitation would always be applied retroactively.

*Reshal,* 754 F.Supp. at 1240 (citations omitted). Furthermore, the interests of uniformity and certainty will not be signifi-

---

**3.** *See* discussion of Illinois blue sky law statute of limitations *infra* part III.

cantly affected by the prospective application of *Short* since only those actions which were filed prior to *Short* would be subject to a different limitations period. *See id.* Therefore, the purpose and effect of the *Short* statute of limitations will not be furthered by retroactive application.

The third *Chevron* factor requires examining the inequities imposed by retroactive application. Plaintiff filed suit before the Seventh Circuit's decision in *Short*. *Cf. Polansky,* 762 F.Supp. at 771 (plaintiff who filed action after *Short* should have been aware of the decision). *Short* was a break from a long-established precedent of borrowing the statute of limitations of the Illinois blue sky law. As discussed above, plaintiffs justifiably relied on pre-*Short* precedent. *See Wentzka,* 759 F.Supp. at 489 (discussion of the oppressive consequences of retroactive application of *Short* ).

All three *Chevron* factors are satisfied. Therefore, the statute of limitations adopted in *Short* will not be given retroactive effect and thus will not govern this lawsuit. *See Reshal,* 754 F.Supp. at 1241.

### III. APPLICATION OF ILLINOIS STATUTE OF LIMITATIONS

 The Illinois blue sky law provides that "[n]o action shall be brought for relief under this Section ... after three years from the date of sale." Ill.Ann.Stat. ch. 121½, ¶ 137.13D (Supp.1991). There is a five year statute of repose which allows a maximum two year tolling of the three year limitations period. *Id.* As discussed in this court's opinion of December 21, 1990, the tolling provision "was designed particularly to cover cases of fraudulent concealment or so-called 'lulling' activities by promoters," as alleged in plaintiffs' complaint. *Id.* (Interpretive Comments). *See Cortes v. Gratkowski,* 1991 WL 632, at *5, 1990 U.S. Dist. LEXIS 17712, at *14 (1990). As stated in the December 21, 1990 opinion,

> The tolling provision provides that the three-year period begins to run on the earlier of the date the plaintiff has actual knowledge or the date the plaintiff in the

exercise of reasonable diligence should have had actual knowledge of the alleged violations. Plaintiffs allege that they discovered the untruth of Parisi's representations in May, 1989. (Complaint, ¶ 11.) Thus, the complaint was filed within three years of the discovery of the fraudulent activity and within five years of the alleged purchase of partnership interests.

*Id.* 1991 WL 632, at *5, 1990 U.S. Dist. LEXIS 17712, at *14–15.

Therefore, the statute of limitations does not bar plaintiffs' claim under § 10(b) of the 1934 Act. Plaintiffs state law claims remain under this court's pendent jurisdiction.

### CONCLUSION

For these reasons, defendant Parisi's motion for summary judgment as to certain plaintiffs is DENIED. The parties are strongly urged to discuss settlement. This case is set for further status on May 27, 1992 at 10 a.m.